It is my honor to represent Mr. Brandon Locke in this appeal. When the Lautenberg Amendment was enacted by Congress in 1996, the Congress, and there's not a lot of legislative history on this, but at the last minute it seems that they enacted in addition to the statute, in by somebody who had been convicted of a misdemeanor crime of domestic violence, they added due process protections to assure that the person wasn't incidentally deprived of the right and thus made a potential or in fact a criminal. And so the exceptions, the due process exceptions provided in section 921, A, 33, B, I, little I, two big I, little B, and I know there's a lot of alphabet. In very plain language they said that if you were tried by a jury or if you had intelligently and knowingly waived your right to a jury, then you would qualify as a person who could be disabled from owning a firearm and thus subject to criminal prosecution. In my case, Mr. Locke did not waive his right knowingly and intelligently either in the Virginia court in which he was convicted of misdemeanor crime of family violence or in the Georgia court. Let me address the Georgia court proceedings first. You can tell by a. Now you have to prevail on both of these, right? That's correct, your honor. If he got a valid conviction either Virginia or Georgia. One conviction would suffice to disable him. Yeah. Your appeal. Yes, sir. And the court submitted findings as to each. That's correct. So the record in the Georgia court I believe clearly shows that there was no waiver by my client, a knowing and intelligent waiver of his right to a jury. When you look at the transcript you can see that the proceeding in that case took place within the period of one minute in which the judge calls the case and asks what's the plea. My client's attorney says, do you have any money today to pay this and understand that you cannot own a firearm any longer or you cannot possess a firearm any longer. And that's it. The government presented. Is there a presumption of regularity that attaches to it? Except for this statute that requires before you can. Yes, I'm not attacking the validity of the conviction. We're not saying the conviction must be set aside. But under the Lautenberg Amendment, this prevents it from being considered as a predicate conviction for purposes of the gun disability. And that's all it does. So you're saying you can challenge the validity of it for purposes of disuse? Correct, your honor. And where do you have to challenge it? I suppose you would go back to Georgia if you wanted to say that the conviction itself was invalid, which my client actually. That would be one way to do it. Yes, sir. But you're saying you can do it in the Virginia District Court. No, we're not challenging the validity of that conviction either. What we are saying is in that case. You're challenging the validity of it insofar as it relates to his possession of a firearm. The validity of its use as a predicate conviction for that disability, as a predicate offense here, you're challenging the validity of it. That's the only reason. Yes, I'm not challenging the validity of the conviction as it stands, just as its use under this statute to criminalize my client's possession of a firearm. And that is a subtle distinction. Yes, it is. But it's a meaningful distinction that Congress addressed, plainly saying that conviction shall not be considered to be a misdemeanor crime of family violence under this code, preventing you from having a firearm. So you're saying the word considered, you're saying that's in the statute and that makes a difference? It makes a substantial difference, yes, your honor. They don't say it is not. They say it's not considered. Not considered, correct. There's no colloquy with the defendant with respect to his right to a jury trial, correct? Exactly. There's no written documentation that he signs when he pleads guilty, which outlines his right to a jury trial and indicates a waiver. Is that also correct? You are exactly right. Are you sure of that? Yes, that's in the record. You have the entire record from Georgia? Everything the clerk sent me represented as the entire record. And it's in the record here? Yes, it's in the appendix. The joint appendix. While we're talking about Georgia, you also argued the issue of expungement, which happened after the charge was brought. And of course, after the commission of the offense, there's case law directly on point, not in this circuit, but that says we look to the disability at the time the conduct occurs or the commission. Yes, ma'am, there is case law to that effect. You're not really asking us to deviate from that, are you? We look at every single crime when we're looking at the requisite elements, we look at the time the conduct occurs. Yes, ma'am, but I'm going to ask you to consider this case as distinct from the case law that you have examined. And I have spent a lot of time looking at case law across the country for this reason. As I understand the case law, it's the state that determines the nature of the conviction. And in this case, Georgia enacted a statute years after my client's conviction. He was convicted there in 2011 or 2009. I can't remember which. I believe it was 2009. And during the pendency of my client's trial in the district court in Alexandria, he had that conviction expunged under a statute that Georgia enacted about a year or two earlier. And the significance of that is because this exception, the section 921 A33, congressional enactment addresses this as well. But the expungement was made by the state court of Muscogee County, Georgia, nunk pro tonk. So it was the state's intention that the conviction be regarded as a nullity from the time that it happened retroactively. I think the state court had meaning when it used, or the legislature certainly did in Georgia, when they expressed nunk pro tonk. And that distinguishes it from other cases in which the person had the disability when they appeared before the court and were charged with the offense of having the gun unlawfully. And you argue it alternatively. If you're successful with your expungement argument or your argument that he did not voluntarily and intelligently waive his right to a jury trial, the Georgia conviction cannot be used as a predicate offense. Yes, ma'am. Two separate grounds for that. If you don't have any further questions about that, I want to address the Virginia conviction. On the Georgia conviction, doesn't, I want to return to the question, doesn't a plea of guilty carry with it a presumption that it did, but does the presumption of regularity that attaches to the guilty plea put upon you the burden to prove that this was an atypical guilty plea? Because I, you know, it's hard, it's hard to think sometimes that someone who pleads guilty is unaware of his right not to plead guilty and to have a jury trial. I will grant you that. But my client is, even now, is a very young man. He's not 30 yet. And when this happened, he might have been 19 or 20 with no, the Georgia contact was his first with the criminal justice system. And to further the point, the case of Boykin versus Alabama. But any court proceeding, a criminal proceeding, you want a trial and plead not guilty by jury. Well, you have to know about it. If you want a trial, you plead not guilty. In waiver of the jury right, which is what this federal statute and Congress said, we want to make sure you have due process, you would knowingly and intelligently waive your right. This is an act that occurs before the court, not in the lawyer's office, not in my client's home, the court. But there is a presumption of regularity, Judge Wilkinson. For purposes of the validity of proceedings. I'm sorry. Particularly running from between state courts and federal courts. We were not an appellate court for this county court. What do you call it? State Court of Muskogee County, Georgia. State Court of Muskogee County. They can't appeal them to the Fourth Circuit Court of Appeals. We have plenty of cases from other places. Well, this is the distinction I tried to draw for you earlier. And I apologize if I wasn't clear. I think the presumption of regularity attaches for purposes of the validity of the conviction as it stands in Georgia. For purposes of using the conviction as a predicate to my client's disability from possessing a gun, Congress specifically said. I'm not sure because if the distinction is, as I say, it's very subtle. Because if you found that the guilty plea, if you say you are not contesting the validity of the guilty plea, you must be agreeing that the guilty plea was a waiver of the right to a jury trial as it normally is. Because if there was no such waiver, the guilty plea would be invalid. And you wouldn't be saying here, we're not contesting the validity of the conviction. But how could you not be contesting the validity of the conviction if the conviction didn't involve a knowing and intelligent waiver? Because I probably didn't make myself clear. No, it's not that you're not making yourself clear. It's just that the distinction is subtle. I don't disagree with that. I think you're right that the distinction, it's a— If you're saying that it's a valid conviction, that you're not contesting the validity of the conviction, then how can we assume anything that a conviction that you say is valid involved a knowing and intelligent waiver of a jury trial? How could it not? Well, two points, if I may. One is Congress wants you to review this record of the Georgia state court to determine whether that there was, in fact, a knowing and intelligent jury waiver. And secondly, the United States Supreme Court in Boykin versus Alabama, you'll remember the defendant in that case pled guilty to five armed robberies and was sentenced to death. He went to court in Alabama. He pled guilty. There was no colloquy, according to the Supreme Court. They didn't examine his guilty plea or whether it was knowing and intelligent. And the Supreme Court said that doesn't cut it. It has to be a knowing and intelligent plea. It's not just the fact of a guilty plea. It's a knowing and intelligent guilty plea. And that includes— In which case, the guilty plea would be invalid. I'm sorry, Your Honor? In which case, the guilty plea would be invalid. That's true. But you're not contending that. You're saying we don't contest the validity of the guilty plea. No, I'm saying I don't contest the validity of the state court conviction as it stands in the records of Georgia. I am using what Congress has provided to say this cannot be considered a conviction. That's the distinction. This cannot be considered a conviction for purposes of this statute, preventing my client from the possession and criminalizing my client's possession of a firearm. And that is a subtle distinction, but it's a meaningful distinction that Congress put out because they could have left this information out altogether and just left it so that anybody who pled guilty without regard to a colloquy or knowing, they could have had somebody who was incompetent come to court and enter a guilty plea. And that person, without having any knowledge, could suffer a conviction. And they're saying, here, we're not going to criminalize that behavior without this prophylactic measure. How come you start with Georgia because you think that's a better argument than Virginia? It's a clearer argument from the record, let me put it that way, because I don't have a transcript of the Virginia proceedings. I only have the Virginia court file. And there is an order of arraignment that notifies my client of what rights he was giving up by pleading guilty, and it does not mention a jury in any respect. Now, my opponent says, the government says that, I see my time is up. Go ahead, finish your thought. Thank you, Your Honor. The government says that, well, you don't have a right in Virginia because this is a lower court proceeding and there is no jury trial in the juvenile and domestic or general district courts of Virginia. But the Constitution of Virginia in Article 1, Section 8, makes express that in non-felonious cases, an accused has a right to a trial by jury in a court of record. So it's an entitlement. It's a constitutional, a state constitutional entitlement to a jury, even though that is not available in the lower court. And it's further enshrined- Could you have availed yourself of that? He did not. But the statute, the federal statute that says it shall not be considered a conviction for purposes of this federal disabling statute regarding firearms, specifically says, if the person has an entitlement to a trial by jury in the jurisdiction, not in the particular court, in the jurisdiction, which is the Commonwealth of Virginia, then unless he's knowingly and intelligently waived that right, it shall not be considered a conviction for purposes of this statute. So when he goes to the juvenile court in Stafford County- What do we interpret the failure to appeal? How do we interpret the failure to appeal to the Virginia Circuit Court? It begs the question of whether my client was aware, whether he knowingly gave up or relinquished his right to a trial by jury because it wasn't addressed by the court at all, even though the Constitution and the legislation in Virginia assures him of that right. It means that he just walks in willy-nilly and he gives up that right without any discussion. All right. Thank you. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Jessica Irvin on behalf of the United States. With respect to the jury waiver issue, the defendant has maintained a very narrow, essentially legal argument that is erroneous as a matter of law. Are you talking about Georgia or Virginia or both? With respect to both, and I'll focus initially on Georgia because there's the additional obstacle in Virginia that he didn't have the right to a jury trial there. But focusing on Georgia at first, he's argued that in order to determine whether he validly and knowingly had waived his right to a jury trial, this federal court and the federal court below should have only considered whether on the state court record there was a memorialized colloquy that explicitly discussed the right to a jury trial or that there was some other written documentation in that state court record showing that the state court judge had explicitly referred to a jury trial right. That has been the extent of this argument throughout these proceedings. Essentially, it's a purported procedural flaw that he's relying on. However, with the question for these federal courts in this federal firearms prosecution cases, did the defendant, Mr. Locke, actually know that he had a right to a jury trial in a jurisdiction where he did in Georgia? Notably, he's not only failed to contest the validity of the plea itself, as your honors have recognized, there is a presumption of regularity that attaches to final state court judgments, as in this case. He's never even alleged so much as offered evidence to meet his affirmative defense that he's trying to raise of proving that he didn't know he had that right to a jury trial. So your view is that the presumption of regularity shifts the bird? Exactly. And all the courts who have considered this issue have held that in this collateral proceeding where he's seeking to attack essentially the validity of that plea and it's implicit knowing an intelligent waiver of a jury trial, he has the affirmative defense. He has the burden of proving by preponderance that he didn't know about that right to a jury trial. And he has never done that. Notably, there's Fourth Circuit law showing that when there's this kind of collateral attack on a state court judgment, there should be, if the defendant wants to try to meet his burden, evidence presented to the federal court. Either the defendant himself testifying... This burden that you're talking about, you're talking about in the context of a federal trial that the defendant has a burden of proof? So this is in order to raise the affirmative defense of the supposed lack of a voluntary intelligent knowing waiver of a jury trial in a 922G proceeding. Yes, he does have the burden of proving that affirmative defense. The Hartzok case from the First Circuit details significantly why that is the case. And there's also Supreme Court case law saying that when there is a collateral proceeding, we're not talking about a direct appeal from the convictions in Georgia or in Virginia. It's the defendant who bears that burden. My basic point is I don't understand how the conviction can be presumed to be valid and unchallenged if there was... I've never heard of a guilty plea that was valid that didn't involve a knowing and intelligent waiver. And it seems to me once you say the guilty plea is valid, you're saying, you know, in the normal run of cases, what goes along with the guilty plea, which is that's the whole reason for pleading guilty. You're pleading guilty because you don't want to go before a jury. That's why you get advantages from doing that. And I don't know how many of these state courts have records of colloquies or not, but I do know that every time in one way or another, either through counsel or through a colloquy, they know that if they're pleading guilty, they know that their knowledge of the criminal justice system may not be sophisticated. But they do know one thing, that if they're going to be pleading guilty, they're going to be giving up their life to a jury trial. And that's the practicality of it. Now, if there's some reason that this was highly atypical, then that's within the knowledge of the defendant. More than it's... I mean, the defendant could say, no, wait, I had no idea that I was... He's not saying that. The troubling aspect to me is that he is conceding that he's making no attack on the validity of the guilty plea. I completely agree with Your Honor for all of those reasons. And the case law that's cited in your brief recognizes the rationale behind that argument and the legal reasons why he, if he's not attacking the validity of the conviction itself, there is that presumption of regularity that attaches. And he certainly had every opportunity in the district court to testify himself and say, I didn't actually know that I had a right to a jury trial there. I did plead guilty, but for whatever reason, I didn't actually know about that jury trial right. Now, we have to... Well, we have to agree with you on one of these two convictions. Only on one you would need to write. Virginia and Georgia. All right. Which one's your best argument? I think they're equally strong. Which one is the best one? I think Virginia. I think Virginia. I think Virginia is... You think Virginia is. All right. Now, then tell us, argue to us why Virginia is the best. There's an additional obstacle there. Indeed, a barrier. There is no right to a jury trial under the circumstances in which Mr. Locke is being prosecuted in this case. But he says what the Constitution gives him one. The Constitution of the Commonwealth of Virginia, he says, gives him a right to a jury trial. He does say that. Well, if that's true, the statutes or the court rules can't overrule the Constitution. So the Virginia Constitution does not actually give the defendant a right to a jury trial there if he pleads not guilty in the Juvenile and Domestic Relations Court, which is the court that had jurisdiction over Dependent Locke's misdemeanor crime. So there's an exception to the Constitution for this kind of court. That language isn't in the Constitutional provision, though, is it? Correct, Your Honor. It is not in the Constitutional provision. It's a broad exception. There is a statutory right under Virginia law to take a right of appeal from a decision of the district court, the state district court, up to the circuit court there. And if certain conditions are met. And you can get a trial of a jury in the circuit court. If certain conditions are met, yes. They're not burdensome restrictions. But if the individual takes that appeal in a timely manner and then elects there to have a jury trial over a bench trial, in that circumstance, there would be a right to a jury trial there. But to get to the circuit court, do you have to plead guilty first? As a matter of Virginia statutory law, no. He could plead not guilty and still appeal within a timely manner, then elect a jury trial there. Is there tension, in your opinion, between that Constitutional provision that counsel quotes and the statutory language that you just addressed with us? No, there's no tension in it. The Constitutional provisions of Virginia don't give him that right to a jury trial there for certain misdemeanors. And that's a function of the two-tier system for criminal justice the state of Virginia has chosen to employ in order to deal with these misdemeanor and other petty offenses. And as the Supreme Court has recognized in a similar context in Massachusetts v. Ludwig, for example, we should do accord to how the state system is choosing to deal with these misdemeanors. So as a Virginia statutory law matter, had he pled not guilty, decided to appeal, and then pled not guilty in that circuit court, that would be a different case. But that's not what he did here. And the record, the arraignment order that counsel was referring to in his argument explicitly shows that the defendant in Virginia was notified of a plethora of rights that he had, including the right to appeal to a circuit court if he did so within 10 days. Again, the defendant did not do so here. He chose to end his case in the juvenile domestic and relations court. And he did not have a right under the Virginia statute. Excuse me. Virginia Supreme Court rule 3A colon 13. Did that thing tell him if you want a jury trial, you've got to appeal? If he had wanted the option of a jury trial, he would have needed to have appealed. Did the advice tell him? Excuse me, Your Honor? You said he got advice if you want to appeal, you have to do it within 10 days. Right, and he was explicitly. Was the advice, if you want to get a jury trial, you have to appeal within 10 days? The written advice of right on the arraignment order did not specifically refer to a jury trial, quote unquote. That's what I thought. Said the right to appeal. And as this court has recognized twice in Ardis as well as in Gordon, that's a meaningful distinction. Virginia has a right to appeal. That is not equivalent to a right to a jury trial here. But even if the court were to try to conflate those two, intention or contrary to what the panels of this court and unpublished decisions had held before, the fact remains that Mr. Locke never contended that he did not actually know that he would have had that option to elect a jury trial in that other court if he had appealed in a timely fashion. What kind of bothers me about that kind of an argument is that the verdict on the government, in my mind, is that not right? Respectfully, Your Honor, it's not. For this to be a misdemeanor crime of domestic violence, which is alleged in the indictment, the government has to prove that beyond a reasonable doubt. They have to prove the elements of the offense. And the firearm offense, he can't possess a firearm. If he's been previously convicted of a misdemeanor crime of domestic violence, as I recall it, that's what it says. And so the government, since I've been around anyway, has the burden of proof of the elements of that offense beyond a reasonable doubt. The government does have a burden of proving beyond a reasonable doubt. That applies to this being a misdemeanor crime of domestic violence. I believe there's a distinction there, which is this. We do have to prove that there was a conviction for a misdemeanor crime of domestic violence. And in this case, we did prove that by putting into the record the certified judgments of conviction, both from Virginia and from Georgia. And the courts who have addressed this issue, the specific provision in 922, G9, 921, 833, this affirmative defense, have said that once the government submits those certified records of conviction, there is that presumption of regularity that attaches. And if the defendant then wishes to say he did not actually know that he had the right to a jury trial when he pleaded guilty, he has the burden at that point of proving, essentially, by a preponderance of the evidence that there was some defect in the state court proceedings or that he didn't otherwise know. That's the difference. So under the argument that the government is presenting, this defendant in Virginia could go all the way through the process, even if he decided to appeal, without being informed of his right to a jury trial, even at the circuit court level. He pleads guilty. There is nothing in the written documents.  isn't required to tell the court. him about his right to a jury trial if he appeals. He either elects to appeal. At that point, he gets a jury trial. But all along this process, where he is pleading guilty, he doesn't ever have to be told about his right to a jury trial. I agree that he certainly doesn't have to be told, for purposes of this proceeding, by the state court judge that he had that right. And that's the only argument that the defendant has been making here. But the state court judge had never told him that he had this purported right to a jury trial. As a lowly district court judge, I've been under the opinion that I am required to tell defendants about that and be convinced that they're knowingly and voluntarily waiving that right before I take their plea of guilty. Right. And there certainly is a rational reason for wanting to do that as a matter of supervisory power over the federal courts. There's certainly the Rule 11, Rule 23 requirements in place there. That's distinct from the question of whether, as a federal constitutional requirement, in order to validly waive one's right to a jury trial by virtue of a plea agreement in a subsequent collateral proceeding, the district court judge was required to have done that. And to our knowledge, there isn't any case law saying that, in fact, is the case. Certainly is the best practice to have that thorough colloquy here. Is it fair to say you're saying that if we were to agree with the defendant with respect to the Virginia thing, we'd be adding an additional element to the offense? I believe I understand, excuse me, Your Honor's question, that right, we also had to prove that you have, if we agree with him, we'd be adding an element to the offense that he has to misdemeanor crime of domestic violence and that in connection with that misdemeanor crime of connection of domestic violence, he made a valid waiver of his right to a jury trial. Right. And that's an additional, he's arguing that the defendant has to argue that there's another element here that's not alleged in the indictment. And that the government's never alleged in one of these offenses, I don't think. We've had these things for years, and they've never alleged that in an indictment, I don't think. That's precisely correct. That is the natural implication of the defendant's argument here. As the Hart Socket explained in great detail, that can't possibly be the case. Well, but Congress put it in the statute. They put it in there. Maybe your indictments are flawed. Respectfully, I disagree with that. Congress put it right in there. It did, as an affirmative defense. And as the Hart Sock Court explained- But normally the defendant doesn't have to defend. I mean, the defendant is entitled to shut up, sit tight, not to say a word. Normally it doesn't. However, when there is an affirmative defense, which the Hart Sock Court explained, may take one of several formats. It could be when there's a statutory exception to the definition of what is actually the crime, which is this case. When there's the defense of a purported justification for having committed the crime, that's an affirmative defense, where the defendant does bear the burden of proving what did or didn't happen in that case. So there certainly are circumstances in which it is permissible to- Well, an affirmative defense, he could also say, it's not me, right? He could say, I'm not the one. That wasn't me that was convicted. Identity would be an affirmative defense too, right? He could make a variety of arguments. But you don't have to allege that. But you do have to prove it was him. We would need to prove that it was him. You have to prove that record that you brought over from the state court was the same fellow. That's correct. And that was certainly presented to the jury. He's never made an argument that was not him. But as the Hart Sock Court explained, it makes sense to have this burden be on the defendant in these collateral attacks. Which court said that? Hart Sock and the First Circuit is the one that- The First Circuit. You're arguing something about the circuit. I'm just trying to figure out what circuit. How long ago was that? The Hart Sock decision was in 2003. Okay. And notably- And that was unanimous? I believe it was. I'm not entirely positive about that. I can tell. That's your case. That's your authority. You know more about it than I do. That's the reason I'm asking. Right. The Hart Sock case is the one that explicitly addresses this in the context of 922G. But we don't have any authority in the Fourth Circuit. Correct. There's nothing on the Fourth Circuit that is- We write this on a clean slate. Yes. However, in analogous context, even the Supreme Court has recognized that the burden is fairly placed on the defendant in a collateral proceeding to attack the validity of that state court judgment. Is this a collateral proceeding? Well, it's a criminal prosecution of the defendant. It is, but it is a collateral attack on the validity of that plea. This isn't a direct appeal of the actual misdemeanor crime of domestic violence conviction. But we're only talking about the waiver of the jury trial. And I do believe that that distinction, because of the statutory language, is important that we're not attacking the plea or the conviction. We're simply focusing on whether there was a knowing and intelligent waiver of the right to a jury trial. And when we look at the case law on knowing and intelligent waiver, it has to be something that's affirmative. And we have, as a federal court, the district court and here, nothing in the record for us to base such a finding on, do we, that there was an affirmative, knowing, and intelligent waiver of the right to a jury trial. I disagree with the framework for the latter in terms of whether there has to be affirmative evidence at this stage. And the reason why, I think, starts with a clear explanation in Park v. Braley, which is a 1992 Supreme Court case. And it distinguishes Boykin, which the defendant relies on heavily, which involved direct appeal from what is a collateral attack. And the definition of a collateral attack there was very broad and would encompass this particular situation. And it looks like I'm about to run out of time, but if I can answer the question. Well, if you're writing that it's affirmative defense or that slur-surfing case is right, then the jury in Alexandria would have to decide whether he had made it an intelligent waiver, not a judge. I disagree with that. All the courts that have considered the issue have held that whether that defense applies is a question of law for the court, essentially, to be defined in that. Well, but the Supreme Court said the juries have to consider whether the elements have been proven. Right, and this isn't an element of the offense. The element of the offense is whether there was that. But it goes to the element of the offense. It's the undercutting of the element of the offense. It is related, however, Frechette... They're saying that the element's not there. You can't use that conviction if this issue isn't taken care of. Then someone would have to go to the jury. He'd have to go to trial, put on his defense. You proved that he's convicted of a misdemeanor over there in, what, Fairfax County? Where was that? It was in Stafford County in Virginia. Stafford County. And he'd have to prove that... Well, he didn't get properly advised. And then the jury'd have to decide where he got properly advised. I disagree. All the cases... If it's a question of fact. All the cases that we cited in our brief make clear that all the courts who have addressed this have held that it's a question of law for the court whether there was that waiver. It's the Hartsoft decision. Well, maybe they're all wrong. Frechette, I don't believe that they are. We don't have any authority here. Frechette. We don't have any decisions on point. I mean, I know we don't have the authority. The Fourth Circuit doesn't. But notably, in Park v. Braley, which is that Supreme Court decision I was referencing, the Supreme Court distinguished Boykin as involving direct review and said that when a respondent, by definition, is collaterally attacking his previous convictions, that is, he's seeking to deprive them of their normal force and effect in a proceeding that has an independent purpose other than to overturn that prior judgment, it's the defendant who bears the burden of showing there that he didn't knowingly and intelligently waive that right. And he didn't do so here, despite having every opportunity to. But the collaterally attack, that sounds like habeas corpus or quorum novus. That's certainly. At this stage, it would be a quorum novus proceeding. That's certainly one example. Rather than a criminal case. That's certainly one example. But we're here on a criminal appeal, whether an element of the offense is satisfied. The element of the offense, the second element of the offense. And there was no dispute. He had a firearm and he had the disability. We're arguing about the disability. That's an element of the offense. The element of the offense was that he had that misdemeanor crime of domestic violence conviction. And as the defendant has conceded throughout, he's not challenging that he did, in fact, have that conviction in place. He's not saying that that was an invalid conviction. The jury was presented with that certified judgment of conviction and concluded that he did have that misdemeanor crime of domestic violence at the time he possessed the firearms. And thus, he could be held accountable in this federal proceeding as a misdemeanor convicted of a crime of domestic violence there. And notably, he did not, as in Boykin, to the extent the defense is saying that he had to affirmatively show in the record that he didn't have this, that he didn't know of this right. He had every opportunity there to testify himself as to what he actually knew about his right to a jury trial. He could have called his Virginia or Georgia defense attorneys to testify about whether they had actually informed him that he had this right to a jury trial. He could have called the state court judges in that case to testify. I actually erroneously instructed him he did have a jury trial right, and I told him he did not. The defendant never did that, despite being explicitly asked by the government and the federal district court whether he was making that argument, that he didn't have that knowledge, such that his plea was not a valid plea. Ms. Ervin, let's hear from Mr. Bidner, okay? Yes, Your Honor, thank you. Thank you for the opportunity. The government is trying to portray a cheetah as a lion. This is not a collateral attack on either the Georgia judgment or the Virginia judgment, and I think that's critical. And Judge Berger has summed this up better than I could. The question is, is there an affirmative defense to the charge of unlawfully possessing a firearm because you have these predicate convictions? And Congress said, if you were entitled to a jury trial in Georgia, Virginia, unless you knowingly and intentionally waived that right, these predicate convictions do not serve to make his possession of the firearm a crime. And it's as simple as that. They shall not be considered. It doesn't say they have to be invalidated. It doesn't say they have to be set aside, although there's a separate provision that says if it's been set aside, it doesn't count as a predicate for this criminal charge. So the question is not whether there's been a collateral attack in none of the cases that counsel cited resemble the facts in my client's case. The question is, did he knowingly and intelligently waive his right to a jury in these lower court proceedings that are used to prevent him from having a firearm? And the record that we have showed in both cases shows that there is no waiver. Remember, how many guilty pleas? I mean, I come back. I still can't understand how you can say a guilty plea is valid without there having been a waiver. I don't think, to me, I think a guilty plea would be valid from the get-go, would be invalid from the get-go if there had been no waiver. But you stood before us and said the guilty plea is valid. And I just, I don't know of the, I don't know of a valid guilty plea in which there was no waiver or right to a jury trial. It just, it may be, there may be one. I think it's highly unlikely. But could you give me some reason to believe that a guilty plea, which you agree is valid, didn't have, did not have, did not involve that kind of waiver? Boycott versus Alabama. The defendant was charged and pled guilty to five counts of armed robbery. And there was no colloquy to test what he was giving up. And it was a guilty plea. And on direct appeal, the Supreme Court said that's not valid because you have to, you, the court, have to ascertain. Well, isn't it, I mean, isn't the difference in the case that you cite that the defendant was directly attacking the validity of the guilty plea because there was no waiver? No, he's asserting it as an affirmative defense because the trial courts in both Virginia and Georgia failed to ascertain whether he had knowingly and intelligently given up his right to a jury, which Congress made a defense to this charge by saying, these shall not be considered as valid convictions for purposes of this. How do you put on this defense to this charge? I presented the record in both cases to show that neither judge. How do you present it to the judge? So it's, you say it's a question for the judge. I believe there's case law that says that it's the court's determination and not a question for the jury. So it goes to a motion to dismiss? And that's how it was presented. It rises on a motion to dismiss. It was a motion to dismiss the indictment in this case. Well, but motions dismissed are routinely denied if they allege the elements of the offense. Yes, but. You're necessarily arguing it's not an element of the offense. It is an element of the offense. It's a defense. It's a defense that. The indictment is insufficient because it doesn't allege that he didn't know he was waiving a jury charge. I disagree with your honor. In this case. You can't get an indictment dismissed if it alleges the elements of the offense. That's been the law forever. But if indictment alleges the elements of the offense and it's signed by the prosecutor and the jury foreman, it goes to trial. That's very traditional. No further question. That's very traditional. But if Congress has said, Congress went out of its way and said, you have this defense and this is how you can prove it. You're saying it's. If it's necessary, the government has to prove it, don't they? Rather than you have to prove it. But if I have an affirmative defense under which no circumstances the government can make out its case because they cannot prove that my client knowingly and intelligently waived his right in the predicate proceedings because she says you have to prove it by preponderance. That's the government's position. And I proved it at the motion stage in this case by presenting the record of the lower courts. And they will say that there's a waiver, but you can examine this till the cows come home. There is no mention of a jury in either case. The question is, when the government produces a certificate record of a guilty plea, you can see the record that the guilty plea is valid. Doesn't, isn't that enough? Isn't that presumption of regularity that a guilty plea involves the waiver of a right to jury trial? Isn't that enough to have you come forward and say, no, in this case, we did not waive it. My time is up, I'm sure. Yeah, but I'm just wondering, why, if there was anything to your view that the guilty plea did not involve the waiver to a jury trial, why didn't you come forward with that? We did. No, you didn't go to trial. We did this pre-trial. I presented the records showing what Congress demands as a defense, which is that neither lower court. No, I'm asking about this particular guilty plea and whether you came. I'm sorry, Your Honor, which guilty plea? The one in Georgia. Okay. Whether you came forward with any evidence whatsoever that the guilty plea didn't involve a waiver of the right, a knowing and intelligent waiver of the right to a jury trial. In other words, it seems to me that in the Georgia thing, that the question before us is this, and that is whether the presumption of regularity, which seems to me to be justified, whether that shifts the burden of you to come forward with something, just something that indicates that there was no waiver involved. Not for purposes of this federal charge. I understand what Your Honor is saying. Did he have a burden when he first came before the court of saying, I don't know? Of course, it begs the question because the court didn't say you have a right to a jury trial. The government can bear the ultimate burden on it, but sometimes within a proof scheme where the government bears the ultimate burden of persuasion, sometimes the burden of production shifts back and forth. So I'm wondering why this isn't a certain situation here. We're talking about a question of law that the courts have said is a question of law, and I think government bears the ultimate burden of proving that there was a waiver, but doesn't the government satisfy the initial, satisfy its initial protofacial obligation of saying here is the certified conviction, here is the record of the guilty plea. Now, if it's something other than a thousands upon thousands of guilty pleas that we know involve inherently knowing an intelligent waiver of the right to a jury trial, that's exactly why the people plead guilty. They don't want to go before a jury in many instances. They get a much better deal without that happening. I guess the question is, I don't know if that doesn't shift the burden of production. I mean, maybe you could defend it. In many instances, there's no right to a jury trial in cases where it's a misdemeanor conviction. In some instances, if the ultimate punishment is less than six months, there may not be a right to a jury trial if it's a purely misdemeanor. But you haven't even said that. You haven't said, you haven't said, no, the Georgia law was such that the punishment was not sufficiently severe to give me a right to a jury trial in this instance. But I would have thought that that would have been open to you, but you didn't even go so far as to raise that. Well, I think we proved that it's included in the appendix, the Georgia statutes showing his right in the Georgia Rules of Procedure. We showed that, and I think we proved it with our record showing that it was an address contrary to the Georgia statutes and rules. I would just beg the court's re-examination of 18 U.S.C. 921-A-33 because I think that that would make it more clear as to how possibly a judgment of conviction could not be used to support a newly created criminal offense, federal criminal offense. Did you object to the judgment of conviction here? Oh, no, because I understood. I couldn't show that it shouldn't be considered. It seems to me like I'm serious. I think you're trying to add an extra element to this offense. No, I think Congress is providing a defense, an affirmative defense to their proof of the conviction. And if you can raise it on a motion to dismiss, what you need to say is the grand jury and the U.S. attorney didn't allege all the elements. There's another element there that they didn't allege, so it is an effective indictment. I'm not saying that. I know you're not, but that would be the proper way to do this, I think. Well, if I was attacking the underlying validity of the judgments... No, you're attacking the indictment here, but you would be. You said you came up here on a motion to dismiss, and you'd have to say the indictment is insufficient. It doesn't allege what it has to allege to get the government where it wants to go. You are exactly right. I know. So you were wanting to add... We wanted to say there's another element to the offense that's not alleged, and you want us to agree with you. It's just a question of whether you see the glass is half empty or half full. Either it's considered an element... Otherwise it's a collateral attack. No, sir, I'm saying that it's either an affirmative defense or... We got Judge Ellis up there reviewing Georgia misdemeanors and Stafford County misdemeanors, whether they're sufficient. He's a very wise judge. That shouldn't be done, and I'm on a motion to dismiss the indictment, I don't think. He's a very wise judge. He is. I agree with that. And I think he... He's very patient with you, and he wrote an opinion here. And for the reasons set forth in my brief, I know I've exhausted my time here and more. Thank you. Thank you, Your Honor. Thank you, Judge King. We've talked a lot. Gladly. We'll come down and greet counsel moving into our final case.
judges: J. Harvie Wilkinson III, Robert B. King, Irene C. Berger